89 F.3d 825
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
In re INFOTECHNOLOGY, INC., a Delaware Corporation, Debtor,
John S. ABELES; Earl W. Brian; Dwight W. Geduldig; John
E. Koonce; Wallace O. Sellers; Paul Steinle;
and John Berentson, Appellants,
v.
INFOTECHNOLOGY, INC., Debtor-Appellee,
PENSION BENEFIT GUARANTY CORPORATION and Avacus Partners,
L.P., Appellees.
 No. 95-5024.
 United States Court of Appeals, Second Circuit.
 Nov. 9, 1995.
 
 Appeal from the United States District Court for the Southern District of New York (Lewis A. Kaplan, Judge).
 APPEARING FOR APPELLANTS:Lawrence S. Hirsh, Reid & Priest, New York, N.Y.
 APPEARING FOR APPELLEES:Joshua J. Angel, Angel & Frankel, New York, N.Y. Tracy Rickett, Pension Benefit Guaranty Corp., Washington, D.C. Paul N. Silverman, Andrews & Kurth, New York, N.Y.
 S.D.N.Y.
 AFFIRMED.
 Before NEWMAN, Chief Judge, ALTIMARI and McLAUGHLIN, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued by counsel.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is hereby AFFIRMED.
 
 
 3
 Appellants, former directors of the debtor-appellee Infotechnology, Inc. ("Infotech"), appeal from the March 7, 1995, judgment of the District Court, which affirmed the June 23, 1994, order of the Bankruptcy Court confirming the Debtor's Third Plan of Reorganization (the "Plan"). Appellants contend that the incorporation into the Plan of the "Avacus Stipulation" and the "Pension Benefit Guaranty Corporation ('PBGC') Term Sheet," which settled claims by, respectively, Avacus Partners, L.P. and the PBGC, violated 11 U.S.C. § 1129(a)(3), the notice requirements of Bankruptcy Rule 9019, and the appellants' due process rights. Appellants advance various other objections to the Bankruptcy Court's approval of the PBGC settlement.
 
 
 4
 1. The Avacus Stipulation, as finally approved in connection with confirmation of the debtor's reorganization plan, limited the indemnity rights of the appellants, who are Avacus directors. Based on their view that the Bankruptcy Court approved the merits of the Avacus Stipulation in November 1993 when it "so-ordered" the settlement, appellants argue that the reorganization plan was approved in violation of Bankruptcy Rule 9019, thereby violating 11 U.S.C. § 1129(a)(3). However, the November 1993 ruling was a preliminary order, binding only as between Avacus and Infotech, the only parties to the stipulation, and was expressly conditioned upon confirmation of the plan by final order of the Court. Such a ruling was not improper. Moreover, we agree with the District Court that, even if there were any error in the Bankruptcy Court's approval of the Avacus Stipulation, such error was harmless. As a result of the settlement, the Debtor resolved a claim against the Estate and was absolved of all expenses relating to a lawsuit that it found not worthy of pursuit, yet was guaranteed fifty percent of the recovery if the lawsuit succeeded. To reject such a favorable settlement would have been an abuse of discretion on the part of the Bankruptcy Court.
 
 
 5
 Since appellants concede that compliance with Rule 9019 provides all the process that is due, appellants' claim that they were denied due process fails. Moreover, appellants' property interests were not impaired until after the Confirmation Hearing, by which time they had received notice and a hearing, thus granting them all the process they were due.
 
 
 6
 2. Appellants make a parallel claim and argument that the PBGC Term Sheet was incorporated into the Plan in violation of Bankruptcy Rule 9019 and due process, even though the settlement was simply an agreement in principle between the Debtor and PBGC and was not subject to a "so-ordered" ruling by the Bankruptcy Court. This argument has no merit. Rule 9019 requires notice and a hearing only for court-approved compromises, and so is inapplicable to the PBGC settlement. See Bankr.R. 9019. In addition, the PBGC settlement was contingent upon a confirmed plan, and thus any alleged impairment of property rights did not occur until after the Confirmation Hearing, by which time appellants had received all the process that was due.
 
 
 7
 Because the PBGC had not selected a termination date for the UPI Pension Plan as of the date the Court confirmed the Infotech Reorganization Plan, appellants contend that the Bankruptcy Court confirmed the Plan without assessing whether Infotech was within UPI's controlled group on the relevant date. A bankruptcy court is required to make an "informed and independent" judgment as to whether proposed compromises are fair and equitable. See Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163 (1968). In reviewing proposed settlements, the Bankruptcy Court's role is not to substitute its business judgment for that of the debtor-in-possession, Depo v. Chase Lincoln First Bank, N.A., 77 B.R. 381, 384 (N.D.N.Y.1987) (stating that courts should respect the business judgment of the trustee), aff'd, 863 F.2d 45 (2d Cir.1988); see also Kalb, Voorhis & Co. v. American Financial Corp., 8 F.3d 130, 132 n. 1 (2d Cir.1993) (equating the rights, powers, and duties of debtors-in-possession with those of trustees), but only to determine "whether the settlement 'fall[s] below the lowest point in the range of reasonableness.' " In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir.) (quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir.), cert. denied, 409 U.S. 1039, 93 S.Ct. 521 (1972)), cert. denied, 464 U.S. 822, 104 S.Ct. 89 (1983).
 
 
 8
 In establishing the termination date, only the interests of PBGC and the plan participants are taken into consideration. See In re Pension Plan for Employees of Broadway Maintenance Corp., 707 F.2d 647, 652 (2d Cir.1983). Knowing it had no legal role in selecting the plan termination date, Infotech made a reasonable business judgment that the termination date selected would likely be a date during which time Infotech was liable for the Pension Plan. The Bankruptcy Court did not abuse its discretion in approving the compromise, based on its decision that Infotech's assessment of the risk of liability was reasonable.
 
 
 9
 Appellants argue that the only information the Bankruptcy Court relied on in assessing whether Infotech was within UPI's controlled group were facts inappropriately gleaned from the Court's handling of the UPI bankruptcy. While the Bankruptcy Court mentioned its involvement in the UPI bankruptcy, appellants have not demonstrated that the Court relied on such knowledge in making its rulings. The Bankruptcy Court played an active role in resolving the PBGC dispute with Infotech and was completely familiar with the facts and circumstances of the PBGC settlement. The mere mention of its involvement in the UPI bankruptcy does not render its handling of the Infotech proceedings improper. Furthermore, the only additional fact appellants list as necessary for an informed decision by the Court is a fixed date for plan termination. The Court did not need to know that date in order to approve the compromise.
 
 
 10
 Appellants contend that Infotech was not in the UPI controlled group, and thus the compromise was not fair and equitable. Under ERISA, two business organizations are within the same controlled group if the organizations are under "common control" within the meaning of Treasury Regulations adopted under sections 414(b) and (c) of the Internal Revenue Code. 29 U.S.C. § 1301(a)(14). Those Treasury Regulations provide that two companies are under common control if one has a direct or indirect ownership interest of eighty percent or more in the other. Treas. Reg. § 1.414(c)-2(b)(2). As of June 27, 1992, the date the Pension Plan was terminated, Infotech controlled ninety-nine percent of the voting stock of UPI. In PBGC v. East Dayton Tool and Die, 14 F.3d 1122, 1126-27 (6th Cir.), cert. denied, 115 S.Ct. 73 (1994), the Sixth Circuit held that the eighty percent test was a bright-line test and dispositive of the issue of control. Whether or not we would agree with that holding, Infotech exercised reasonable business judgment, in light of this decision, in determining that a settlement was in its best interests because of the substantial likelihood that it would be held liable for the Pension Plan under the eighty percent test. The Court's approval was proper.
 
 
 11
 Appellants argue that the PBGC's agreement with the UPI Bankruptcy Trustee to terminate the UPI Pension Plan was invalid, because such agreement had to be made with the UPI Plan Administrator. However, document tendered by the PBGC establish that amendments to the UPI Pension Plan, coupled with the resignations of the Pension Board members, made the UPI Bankruptcy Trustee the Plan Administrator. Since the authenticity of these documents is not challenged, we grant the PBGC's motion to supplement the record with these documents, and conclude that the agreement to terminate the Pension Plan was validly concluded with the appropriate party.